**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| INTERCONTINENTAL GREAT BRANDS, LLC; and MONDELĒZ CANADA, INC. | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 25-cv-_____ |
| | ) | **COMPLAINT** |
| | ) ) | **PUBLIC REDACTED VERSION** |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| GHOST, LLC; GHOST BEVERAGES, LLC; GHOST LIFESTYLE, LLC; and KEURIG DR. PEPPER, INC. | ) ) ) ) ) | |
| Defendants, | ) | |

Plaintiffs Intercontinental Great Brands, LLC ("IGB") and Mondelēz Canada, Inc.

("MCI") (collectively, "Plaintiffs" or the "Mondelēz Entities") bring this action against

defendants Ghost, LLC ("Ghost, LLC"); Ghost Beverages, LLC ("Ghost Beverages")

(together with Ghost, LLC, the "Ghost Entities"); Ghost Lifestyle, LLC ("Ghost

Lifestyle"); and Keurig Dr. Pepper, Inc. ("KDP") (collectively, "Defendants"), and allege

as follows:

## <u>SUMMARY OF ACTION</u>

1.      Plaintiffs bring this lawsuit to stop Defendants' ongoing and unlawful use

of Plaintiffs' famous trademarks. Plaintiffs are both part of the Mondelēz International

family of companies and owners of iconic brands like OREO, CHIPS AHOY!, NUTTER BUTTER, SOUR PATCH KIDS, and SWEDISH FISH. In 2018, Plaintiffs entered into an agreement granting the Ghost Entities a license to use these famous marks for energy drinks and supplements. When the Ghost Entities were acquired by KDP in late 2024 and transferred their licensing rights without Plaintiffs' approval, Plaintiffs exercised their contractual right to terminate the license agreement. Defendants refuse to abide by the terms of the contract. Instead, they continue to use Plaintiffs' valuable trademarks without authorization and in breach of their continuing obligations under the terminated license agreement. Defendants are willfully infringing on Plaintiffs' intellectual property rights and causing substantial and irreparable harm to their carefully cultivated brands and goodwill.

## PARTIES

2.      IGB is a Delaware limited liability company with its principal place of business at 100 Deforest Avenue, East Hanover, New Jersey 07936.

3.      MCI is a Canadian corporation incorporated under the Canadian Business Corporations Act ("CBCA") with its principal place of business at 277 Gladstone Avenue, Toronto, Ontario, Canada M6J 3L9.

4.      On information and belief, Ghost, LLC is a Nevada limited liability company with its principal place of business at 400 N. State Street, Fourth Floor, Chicago, Illinois 60654.

1

5.      On information and belief, Ghost Beverages is a Delaware limited liability company with its principal place of business at 5661 S. Edmond Street, Las Vegas, Nevada 89118.

6.      On information and belief, Ghost Lifestyle is a Delaware limited liability company.

7.      On information and belief, KDP is a Delaware corporation with its principal place of business at 53 South Avenue, Burlington, Massachusetts 01803.

## JURISDICTION AND VENUE

8.      This Court has original subject-matter jurisdiction over Plaintiffs' federal claims pursuant to the Lanham Act, 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over Ghost, LLC because, on information and belief, it maintains its headquarters in Chicago, Illinois. Additionally, Ghost, LLC has consented to personal jurisdiction to courts sitting in Chicago, Illinois, in its license agreement with Plaintiffs.

11.     This Court has personal jurisdiction over Ghost Beverages because it avails itself of and conducts extensive and ongoing business in Illinois. Additionally, Ghost Beverages has consented to personal jurisdiction to courts sitting in Chicago, Illinois, in its license agreement with Plaintiffs.

12.     This Court has personal jurisdiction over Ghost Lifestyle because it avails itself of and conducts extensive and ongoing business in Illinois.

13.     This Court has personal jurisdiction over KDP because it avails itself of and conducts extensive and ongoing business in Illinois.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Defendant Ghost, LLC is headquartered in this judicial district, and a substantial part of the events giving rise to the claims below occurred in this district. Additionally, venue is proper in this District because IGB; MCI; Ghost, LLC; and Ghost Beverages have consented by contract to venue in courts sitting in Chicago, Illinois. In the alternative, venue is proper in this District under 28 U.S.C. § 1391(b)(3) because Defendants are subject to this Court's personal jurisdiction.

## FACTUAL BACKGROUND

**A.     The Mondelēz Entities and Their Iconic Snack Brands**

15.     IGB and MCI are part of the Mondelēz International group of companies ("Mondelēz"), which manufacture and sell some of the most iconic snacks and candies in the world, including SOUR PATCH and SWEDISH FISH gummies (collectively, "Gummy Brands"), as well as CHIPS AHOY!, NUTTER BUTTER, and OREO cookies (collectively, "Cookie Brands").

16.     Plaintiffs, through their predecessors, affiliates, and licensees, have been continuously selling products under the Gummy and Cookie Brands throughout the

3

United States for decades. Plaintiffs' Gummy Brands are among the bestselling brands of non-chocolate soft and chewy candy in the United States. Likewise, their Cookie Brands are among the most recognizable and most popular cookies in the United States and beyond—by some measures, OREO cookies are the number one selling cookie in the world. To illustrate the popularity of their Gummy and Cookie branded products, Mondelēz sells tens or hundreds of millions of packages of each Gummy and Cookie Brand in the United States each year. The SOUR PATCH, SWEDISH FISH, CHIPS AHOY!, NUTTER BUTTER, and OREO brands are all famous brands and associated exclusively with Mondelēz.

17.     Just as famous and well-known as the Gummy and Cookie Brands are the designs Plaintiffs and their affiliates use in their packaging and marketing of those products. Examples of the Gummy and Cookie Brand designs are shown below and are hereinafter referred to as the "Gummy and Cookie Designs".

| | |
|---|---|
|  | SOUR PATCH |
|  | SWEDISH FISH |

| | |
|---|---|
| | CHIPS AHOY! |
| | NUTTER BUTTER |
| | OREO |

18. Over the period of 2021 to 2025 alone, Mondelēz has sold over 915 million packages of candy bearing the Gummy Brands and Designs, along with more than 3.1 billion packages of each Cookie Brand products, all of which bore the Cookie Brands and Designs.

19. Products featuring or sold under the Gummy and Cookie Brand trademarks are available in tens of thousands of stores in the United States, ranging from mom-and-pop stores to convenience stores such as 7-Eleven; candy stores; grocery chains including Shoprite, Publix, and Kroger; mass-market chains, including Walmart and Target; and club stores, including Costco, Sam's, and BJs.

20.    Plaintiffs also license the use of their Gummy and Cookie Brand trademarks to third parties in connection with food/beverage and non-food/beverage products through written license agreements.

**B.    Plaintiffs' Gummy and Cookie Brand Trademarks**

21.    Plaintiffs own extensive common law rights in their family of Gummy and Cookie Brand trademarks and designs, including but not limited to SOUR PATCH KIDS (word), SPK (word), SOUR.SWEET.GONE. (word), SOUR PATCH KID (design), SOUR PATCH KID (kid design), SOUR THEN SWEET (word), SOUR THEN SWEET (design), REDBERRY (word), REDBERRY (design), SWEDISH FISH (word), SWEDISH FISH (design), SWEDISH FISH Scale Design (design), SWEDISH FISH Fish Design (design), CHIPS AHOY! (word), CHIPS AHOY! (design), NUTTER BUTTER (word), NUTTER BUTTER (design), NUTTER BUTTER Cookie Design (design), OREO (word), OREO (design), and OREO Wafer Design (design). IGB, MCI, and their Mondelēz affiliates have continuously used all the foregoing trademarks in connection with their goods and services for decades.

22.    Plaintiffs also own the following United States Trademark Registrations for their Gummy and Cookie marks, all of which are legally and validly registered on the Principal Register of the United States Patent and Trademark Office ("USPTO") (collectively, the "MDLZ Registrations").

6

| Mark | Owner | Reg. No. | Reg. Date | Goods/Services |
|------|-------|----------|-----------|----------------|
| SOUR PACH KIDS (word) | MCI | 5,377,600 | Apr. 23, 2019 | Candy |
| SOUR PATCH KIDS (design) | MCI | 4,305,345 | Mar. 19, 2013 | Candy; Frozen confections |
| SOUR PATCH KID Design (design) | MCI | 2,812,019 | Feb. 10, 2004 | Candy |
| SWEDISH FISH (word) | IGB | 1,273,762 | Apr. 10, 1984 | Candy |
| SWEDISH FISH Scale Design (design) | IGB | 2,645,523 | Nov. 05, 2002 | Candy |
| CHIPS AHOY! (word) | IGB | 792,672 | Jul. 13, 1965 | Cookies |
| CHIPS AHOY! (design) | IGB | 4,812,996 | Sep. 15, 2015 | Cookies |
| NUTTER BUTTER (word) | IGB | 916,411 | Jul. 13, 1971 | Biscuits |
| NUTTER BUTTER Cookie Design (design) | IGB | 903,677 2,142,003 | Dec. 01, 1970 Mar. 10, 1998 | Cookies |
| OREO (word) | IGB | 93,009 | Aug. 12, 1913 | Biscuits |

| Mark | Owner | Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|---|
| OREO (design) | IGB | 3,955,767 | May 03, 2011 | Bakery goods; Biscuits; Cookies |
| OREO Cookie Design | IGB | 1,901,838 | Jun. 27, 1995 | Cookies |

23. Plaintiffs' federal registrations for the marks identified in the table above are incontestable under 15 U.S.C. § 1065. Plaintiffs' incontestable registrations are conclusive evidence of the validity of the marks listed in the registrations, Plaintiffs' ownership of the marks, and Plaintiffs' exclusive right to use the marks in commerce in connection with the identified goods and services. 15 U.S.C. § 1115(b).

24. The marks reflected in the MDLZ Registrations, together with Plaintiffs' common law and trade dress rights in the Gummy and Cookie trademarks and Designs, are hereinafter referred to as the "MDLZ Marks."

25. Plaintiffs use the MDLZ Marks in advertising, marketing, and promotional materials on a nationwide and worldwide basis through various media, including but not limited to, the Internet and customer communications. The success of the Gummy and Cookie Brands and their related products is due, in part, to the extensive promotion and advertising Plaintiffs have undertaken for the MDLZ Marks. Plaintiffs annually spend a significant amount of money on promoting and protecting the MDLZ Marks.

8

26.     Plaintiffs' extensive use and advertising of the MDLZ Marks has resulted in consumer recognition that the MDLZ Marks identify Plaintiffs and Mondelēz as the source of some of the most successful and iconic gummy and cookie snacks in the world. The MDLZ Marks are assets of incalculable value and an identifier of Plaintiffs' goods and services, and goodwill.

27.     The MDLZ Marks are inherently distinctive and well-known for Plaintiffs' goods and services, and valuable consumer goodwill exists in the MDLZ Marks. The MDLZ Marks symbolize an exceptional level of quality, taste, and trustworthiness, which are crucial qualities in the packaged snack foods field. Such goodwill was generated long before Defendants' use of marks identical or confusingly similar to the MDLZ Marks.

### C.     Plaintiffs' License Agreement with the Ghost Entities

28.     In early 2018, Plaintiffs and the Ghost Entities entered into a written license agreement whereby Plaintiffs granted Ghost, LLC a license to use certain of the MDLZ Marks in connection with (1) sports nutrition powders and ready to drink functional beverages including pre-workout, energy, hydration and recovery drinks; and (2) powder and ready to drink protein formulas that contain a specific combination of flavors to mimic the flavor of the goods sold under some of the MDLZ Marks.

29.     Between 2018 and 2024, the parties agreed to several amendments and extensions of the license agreement, typically through a combination of formal

amendments accompanied by certain letter agreements relating to development, manufacture, and sale of the goods. The license agreement, its amendments, and the related letter agreements are attached as Exhibit A and hereinafter referred to as the "MDLZ License Agreement." As reflected most recently Amendment #7, under the operative version of the MDLZ License Agreement, Plaintiffs granted to the Ghost Entities a license to the use the MDLZ Marks identified in Paragraph 22 of this Complaint. Ex. A-7, Amen. 7.

30. In the MDLZ License Agreement, the Ghost Entities agreed that the MDLZ Marks were the exclusive property of Plaintiffs. Ex. A at 1.

31. In the MDLZ License Agreement, the Ghost Entities agreed that ███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ Ex. A § 14(a). The Ghost Entities further agreed that ████

████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████ . Ex. A § 7, A-7 Schedule A.

32. In the MDLZ License Agreement, the Ghost Entities agreed that the Agreement would end ████████████████ following notice of any merger or consolidation between the Ghost Entities and another company, █████████████

██████████████████████████████████████████████

████████████████████ Ex. A § 13(d).

33.     In the MDLZ License Agreement, the Ghost Entities also agreed they would not assign any of their rights or obligations under the Agreement without Plaintiffs' written approval, which Plaintiffs agreed not to unreasonably withhold. Ex. A § 18(k). The Agreement specifies that such assignment includes ████████ ██████████████████████████████ such that the Ghost Entities' failure to seek Plaintiffs' approval in advance of any such assignment would constitute a breach of Section 18(k) of the MDLZ License Agreement. *Id.*

34.     Under the MDLZ License Agreement, all notices required by the Agreement must be provided in writing to the contact person identified ████████ ████████████████████████████████████████ ████████████████ Ex. A § 18(m). Likewise, all requests for approvals required by the Agreement must be made in writing to the individuals identified █ ████████████████████. Ex. A § 18(n). For purposes of the approval required under Section 18(k), the MDLZ License Agreement required the Ghost Entities to seek approval ████████████████████████████████████████ ██████████████

35.     In the MDLZ License Agreement, the Ghost Entities agreed that if they breached any of the terms of the Agreement ████████████████████████

████████████████████████████████████████

████████████████████████████. Ex. A § 13(c). The Ghost

Entities further agreed they ████████████████████████████

████████████████████████████████████████

████████. *See* Ex. A § 14(b).

### D. Ghost's Breach of the MDLZ License Agreement

36.     On October 23, 2024, KDP announced that it had entered into an

agreement to acquire Ghost Lifestyle and Ghost Beverages. According to the merger

announcement, American Bottling Company, a wholly owned subsidiary of KDP,

agreed to acquire 100% of Ghost Beverages, which it subsequently contributed to a new

company—Ghost Lifestyle—in exchange for a 60% equity interest in Ghost Lifestyle.

Once the transaction was complete, KDP would have a controlling interest in Ghost

Lifestyle, giving it sole authority and discretion over the management, control and

operation of Ghost Lifestyle and its respective subsidiaries and affiliates, including

Ghost Beverages. The merger agreement closed on December 31, 2024.

37.     As reflected in Defendants' own communications concerning the merger,

the transaction between KDP and the Ghost Entities constituted a transfer of control of

Ghost Beverages, and thus an "assignment" of Ghost Beverages' rights under Section

18(k) of the MDLZ License Agreement.

38.     At no time between the merger announcement on October 23, 2024 and the close of the transaction on December 31, 2024 did Ghost Beverages (or any affiliate) seek Plaintiffs' approval to assign Ghost Beverages' rights or obligations under the MDLZ License Agreement.

39.     On January 14, 2025, after Ghost Beverages had already assigned its rights under the MDLZ License Agreement without Plaintiffs' written approval, the CEO of the Ghost Entities emailed an individual employed by Plaintiffs and asked "[c]an you maybe just send a couple sentence memo on letterhead that says the below [discussion concerning possible license renewal] acknowledges the KDP deal partnership and gives us at a minimum 26 at current terms so we know Target isn't going to launch and then disco within a few months?" Plaintiffs did not respond to the Ghost Entities' request.

40.     On January 29, 2025, Plaintiffs informed the Ghost Entities that the MDLZ License Agreement would end within three months as a result of the closing of the reported merger transaction. Plaintiffs also reserved any rights and remedies with respect to a breach of Section 18(k) of the MDLZ License Agreement. The Ghost Entities did not seek Plaintiffs' approval (written or otherwise) for the assignment under Section 18(k) in response to Plaintiffs' January 29 letter.

41.     Instead, recognizing the breach and the inability to cure it without unwinding the KDP acquisition, KDP representatives contacted Plaintiffs to attempt to negotiate an amendment to the MDLZ License Agreement to allow the Ghost Entities to

continue using the MDLZ Marks. The amendment proposed an upfront payment to Plaintiffs and revised terms with respect to royalties, global expansion, and global exclusivity. Despite multiple conferrals, the parties could not reach agreement on an amendment. At no point during the negotiations did the Ghost Entities seek Plaintiffs' approval (written or otherwise) for the assignment under Section 18(k) in response to Plaintiffs' January 29 letter.

42.     As reflected in KDP's public filings, effective March 3, 2025, KDP acquired the right to distribute the Ghost Entities' products, including those bearing the MDLZ Marks. Upon information and belief, KDP now distributes the products at issue in this complaint.

43.     On March 18, 2025, Plaintiffs provided notice of termination of the MDLZ License Agreement pursuant to Section 13(c) of the MDLZ License Agreement, arising out of the Ghost Entities' breach of Section 18(k) of the MDLZ Agreement. Consistent with Section 13(c), Plaintiffs stated that the MDLZ License Agreement would end █████ █████ on April 17, 2025. ███████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████ *See* Ex. A § 14(b).

44.     Plaintiffs and KDP continued to attempt to negotiate a new license following MDLZ's March 18 letter, but were unable to reach an agreement.

14

45. On March 28, 2025, the Ghost Entities notified Plaintiffs of their intent to use the MDLZ Marks through April 30, 2025 and continue selling goods bearing the MDLZ Marks for 90 days thereafter, in violation of the MDLZ License Agreement. The Ghost Entities also sought, for the first time, approval for their assignment of rights to Ghost Lifestyle and KDP (though Defendants still have not ███████████████ ████████████████████████████████████████████████████ ██████████ .

46. Following further failed negotiations to reach a new agreement, on April 21, 2025, Plaintiffs contacted the Ghost Entities to confirm that (1) the MDLZ License Agreement ended on April 17, 2025; (2) the Ghost Entities and their third-party vendors must immediately ████████████████████████████████████████ as required by the MDLZ License Agreement, *supra* ¶ 31; and (3) the Ghost Entities must abide by their covenant █████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████ *supra* ¶ 31. Plaintiffs also rejected the Ghost Entities' March 28 assertion that they could demand Plaintiffs' approval for their assignment of rights, after the close of the transaction assigning those rights, and after Plaintiffs notified the Ghost Entities of the impending termination.

E.      **Defendants' Infringing Conduct in Violation of Plaintiffs' MDLZ Marks and in Breach of the MDLZ License Agreement**

47.      Upon information and belief, all Defendants have continued to market and sell energy drink and protein products bearing the MDLZ Marks following the April 17, 2025 termination of the MDLZ License Agreement. Indeed, Ghost Lifestyle's website (ghostlifestyle.com, last accessed April 23, 2025) continues to advertise and sell energy drinks and supplement products bearing the MDLZ Marks, as depicted below:



48.      Upon information and belief, Defendants also continue to market and sell their products through numerous club, grocery, convenience, mass market, and health & wellness stores, and e-commerce marketplaces, including Instacart, Amazon, Target, Walmart, CVS, Dick's Sporting Goods, and Stop & Shop.

49.      Defendants have had constructive notice of Plaintiffs' ownership of the federally registered rights to the MDLZ marks under 15 U.S.C. § 1072, at least as early as 2018, when they agreed to the MDLZ License Agreement.

16

50.     The MDLZ License Agreement terminated on April 17, 2025. Since that time, Plaintiffs have not authorized, licensed, or otherwise permitted Defendants to use the MDLZ Marks, or any confusingly similar variation thereof.

51.     Simply put, there is no legitimate reason or need for Defendants to use the MDLZ Marks. Such use is not licensed and violates several provisions of the MDLZ License Agreement.

**F.      Defendants' Intentional Actions Have Caused Extensive Harm and Damage to the MDLZ Entities.**

52.     Defendants' willful actions are intentional and intended to trade on the reputation and goodwill of the MDLZ Marks. Defendants had actual knowledge and constructive notice of Plaintiffs' ownership of the MDLZ Marks. Moreover, Defendants acknowledged Plaintiffs' ownership of the MDLZ Marks in the MDLZ License Agreements. Despite this, Defendants proceeded to (and continue to) willfully infringe upon Plaintiffs' rights.

53.     Defendants' use of the MDLZ Marks is likely to mislead, deceive, and confuse the purchasing public. It is likely that consumers will mistakenly believe that Defendants are connected, associated or in some way affiliated with Plaintiffs, when in fact no such connection, association or affiliation exists, especially because the MDLZ License Agreement expired on April 17, 2025.

54.     Defendants' conduct causes and/or has caused damage and irreparable injury to Plaintiffs, and to its goodwill and business reputation. As a direct and

proximate result of Defendants' infringement of the MDLZ Marks in violation of Plaintiffs' rights in the marks the MDLZ License Agreement, Plaintiffs have suffered, and will continue to suffer, irreparable harm, damages and economic injury.

## CLAIMS

### COUNT I: Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114(1) (Against All Defendants)

55.     Plaintiffs restate and reallege the allegations in paragraphs 1 through 54.

56.     Plaintiffs own exclusive rights in the U.S. registrations for their MDLZ Marks.

57.     Defendants have knowledge of the Plaintiffs' exclusive rights in the MDLZ Marks.

58.     Defendants have from time to time contracted for non-exclusive licenses from Plaintiffs to use the MDLZ Marks in their products marketed to consumers.

59.     After April 17, 2025, Defendants' licenses to use the MDLZ Marks ended in accordance with their license agreement with Plaintiffs. Accordingly, as of April 17, 2025, Defendants do not have Plaintiffs' authorization or consent to make any use of the MDLZ Marks. Defendants have knowledge that their authorization and consent to use the Trademarks ended after April 17, 2025.

60.     Nonetheless, after April 17, 2025, Defendants have continued to market, distribute, and sell in interstate commerce, without Plaintiffs' consent, consumer products that bear reproductions or copies of the MDLZ Marks. Defendants after April

17, 2025, have continued to hold out their products, without Plaintiffs' consent, as imitating the flavors of the food products designated by the MDLZ Marks.

61. Defendants' continued marketing, distribution, and selling in interstate commerce of products bearing the MDLZ Marks is likely to deceive customers and the public as to the source or sponsorship of Defendants' products; or into believing that Defendants' products are manufactured, licensed, sponsored, or otherwise approved by Plaintiffs, and/or that they feature flavors validly licensed from Plaintiffs.

62. Defendants' continued use of the MDLZ Marks is in bad faith, and with full knowledge of Plaintiffs' exclusive rights in and ownership of the MDLZ Marks, and with full knowledge of the goodwill and reputation associated with the MDLZ Marks.

63. Defendants' ongoing conduct is intended to reap the benefit of the goodwill that Plaintiffs have created in the MDLZ Marks and constitutes trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1).

64. Defendants' acts have occurred in interstate commerce and have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

**COUNT II: Trademark Dilution Under the Lanham Act, 15 U.S.C. § 1125(c)**
**(Against All Defendants)**

65. Plaintiffs restate and reallege the allegations in paragraphs 1 through 64.

66. As a result of Plaintiffs' extensive use and promotion of the MDLZ Marks, the offering of goods under the MDLZ Marks nationwide, and the uninterrupted use of

the MDLZ Marks with Plaintiffs' products for decades, the MDLZ Marks are famous throughout the United States, highly distinctive of Plaintiffs' goods, and widely recognized among the consuming public as a designation of source of Plaintiffs' goods.

67.     The MDLZ Marks became famous throughout the United States long before January 1, 2018, when Defendants' first license to use the MDLZ Marks in connection with their own products went into effect.

68.     Since April 17, 2025, Defendants have continued, without Plaintiffs' authorization or consent, to market, distribute, and sell in interstate commerce their products while bearing the visual likeness of the MDLZ Marks and gustatory flavor of Plaintiffs' products that bear the MDLZ Marks.

69.     Defendants' continued unauthorized commercial use of the MDLZ Marks is likely to dilute Plaintiffs' famous MDLZ Marks by impairing their distinctiveness, thereby lessening their capacity to mark and identify products associated exclusively with Plaintiffs, all in violation of the Lanham Act, 15 U.S.C. § 1125(c).

70.     Defendants' acts have occurred in interstate commerce and have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

## COUNT III: Breach of Contract Under Illinois Law
### (Against Ghost, LLC and Ghost Beverages)

71.    Plaintiffs restate and reallege the allegations in paragraphs 1 through 70.

72.    Plaintiffs; Ghost, LLC; and Ghost Beverages have agreed by contract that their disputes shall be construed and enforced in accordance with the substantive laws of the State of Illinois, except for trademark, unfair competition, and false advertising claims, which are to be construed in accordance with United States federal law.

73.    Under Illinois law, a breach of contract claim must allege (1) the existence of a valid contract, (2) performance by the plaintiff, (3) a breach by the defendant, and (4) damages to the plaintiff.

74.    Effective January 1, 2018, Plaintiffs entered a contract to license certain trademarks to Ghost, LLC. Effective January 1, 2020, Plaintiffs and Ghost, LLC executed a fourth amendment to the Licensing Agreement, which added Ghost Beverages as a party to the amended agreement. Plaintiffs; Ghost, LLC; and Ghost Beverages executed additional amendments and ancillary agreements via letter, all of which updated and amended the Licensing Agreement. These amendments were made effective June 1, 2018 ("Amendment #1"), November 1, 2018 ("Amendment 2"), May 1, 2019 (Amendment #3), January 1, 2020 (Amendment #4), January 1, 2021 (Amendment #5), April 1, 2021 (Amendment #6), and October 15, 2024 ("Amendment #7"), and through letter agreements or flavor letter agreements dated October 3, 2019, March 31, 2020, and April 1, 2021 (collectively, as defined above, the "MDLZ Licensing Agreement").

21

75.     At all times when the MDLZ Licensing Agreement was in effect, Plaintiffs performed under the MDLZ Licensing Agreement by authorizing Defendants' uses of its MDLZ Marks.

76.     Section 18(k) of the Licensing Agreement states that █████████████████ ██████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████

77.     On or about October 23, 2024, KDP entered into a definitive agreement to acquire a significant interest in Ghost, LLC and Ghost Beverages. The transaction, which closed on December 31, 2024, according to KDP's Form 8-K filed with the United States Securities and Exchange Commission on January 3, 2025, resulted in KDP owning a 60% interest in Ghost Beverages and Ghost Lifestyle, leaving it with sole authority and discretion over the management, control, and operation of Ghost Beverages and Ghost Lifestyle. Defendants engaged in this transaction without written approval from Plaintiffs.

78.     As a result of the December 31, 2024 transaction, Ghost Beverages assigned without written approval from Plaintiffs their rights and obligations under the MDLZ Licensing Agreement to Ghost Lifestyle and KDP because the transaction left Ghost Beverages under the management, control, and operation of KDP via a stock or asset transfer or merger. ███████████████████████████████

██████████, this assignment was in express breach of Section 18(k) of the Licensing Agreement.

79.     Section 13(c) of the Licensing Agreement allows █████████████████ ████████████████████████████████████████████████████████████████ ██████ Defendants did not—and, in fact, could not—cure their breach, because doing so would require unwinding their transaction.

80.     On March 18, 2025, Plaintiffs notified Defendants of their intent to terminate the MDLZ License Agreement pursuant to Section 13(c) and because of the Ghost Entities' breach of Section 18(k). ██████████████████████████ ████████████████████ Plaintiffs informed Defendants that the MDLZ License Agreement would terminate on April 17, 2025.

81.     After April 17, 2025, Defendants continued to avail themselves of the MDLZ Marks, for which they only had right to use due to the MDLZ Licensing Agreement, which as of that date was terminated.

82.     Section 13(c) of the MDLZ Licensing Agreement further states ██████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████

23

83. Following April 17, 2025, Defendants have continued to sell products that bear the MDLZ Marks, in breach of Sections 7, 14(a), and 13(c) of the MDLZ Licensing Agreement.

84. Because of Defendants' breach of the MDLZ Licensing Agreement under the foregoing Sections, Plaintiffs have been deprived of adequate compensation for Defendants' continued and unlawful use of the MDLZ Marks after April 17, 2025.

85. Upon information and belief, Defendants do not intend to stop selling products making use of the MDLZ Marks despite the termination of the MDLZ Licensing Agreement on April 17, 2025.

86. Defendants' acts have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

## COUNT IV: Illinois Deceptive Trade Practices
### (Against All Defendants)

87. Plaintiffs restate and reallege the allegations in paragraphs 1 through 86.

88. Defendants' unauthorized use of the MDLZ Marks, as alleged herein, has caused, and is likely to cause in the future, a likelihood of confusion or misunderstanding as to the sponsorship, affiliation, or connection of Defendants' and Plaintiffs' businesses, inasmuch as it gives rise to the incorrect belief that Defendants' businesses have some connection with Plaintiffs. These acts constitute deceptive trade

practices in the course of Defendants' businesses in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1, *et seq.*

89.     These acts have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

## COUNT V: Illinois Common Law Unfair Competition
## (Against All Defendants)

90.     Plaintiffs restate and reallege the allegations in paragraphs 1 through 89.

91.     As a result of the actions complained of herein, Defendants have misappropriated valuable property rights of Plaintiffs, have passed off their goods and services as those of Plaintiffs', have traded and are continuing to trade off the goodwill symbolized by the MDLZ Marks, and are likely to cause confusion or mistake, or to deceive members of the consuming public. These acts constitute unfair competition in violation of the common law of the State of Illinois.

92.     These acts have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request judgment and order:

A.      That the defendant Ghost Entities breached the MDLZ License Agreement when they ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████

B.      That the defendant Ghost Entities willfully breached the MDLZ License Agreement by continuing to manufacture, sell, distribute, and advertise goods bearing the MDLZ Marks after termination of the MDLZ License on April 17, 2025.

C.      That all Defendants willfully violated Sections 32(1) and 43(a) of the Lanham Act by manufacturing, selling, distributing, and/or advertising goods bearing the MDLZ Marks without a license to do so.

D.      That all Defendants' unlawful use of Plaintiffs' MDLZ Marks constitutes a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1, *et seq.* and the common law of the State of Illinois.

E.      That Defendants and their officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns and attorneys, as well as all those in active concert or participation with them, be preliminarily and permanently enjoined and restrained from:

a.  using any of the MDLZ Marks in any way;

b.  conducting any activities that constitute, related to, refer to, or concern the advertising, promotion, manufacture, production, importation, distribution, display, or sale of any product or product packaging in any media or format using any of the MDLZ Marks, including with respect to goods in stock or in the process of manufacture;

c.  imitating, copying, or counterfeiting the MDLZ Marks;

d.  transferring, consigning, selling, shipping, or otherwise moving any goods, packaging, or other materials in Defendants' possession, custody, or control bearing any of the MDLZ Marks;

e.  owning, renting, purchasing or otherwise obtaining rights to any internet search term, keyword or social media handle that includes in whole or in part any of the MDLZ Marks for purposes of promoting Defendants' products;

f.  doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead consumers or others in the food, nutrition, or supplement products industry into the belief that the goods provided by Defendants emanate from or originate with Plaintiffs, or are somehow sponsored, licensed, endorsed, or

authorized by, or affiliated, associated or connected with Plaintiffs; and/or

g.  offering, selling, or distributing any co-branded gummy flavored products or products with cookie pieces as a primary or featured ingredient for one year, except as allowed in the MDLZ License Agreement.

F.  Directing that Defendants destroy all goods, labels, tags, signs, stationery, prints, packages, promotional and marketing materials, advertisements and other materials currently in its possession or under its control incorporating, featuring or bearing any of the MDLZ Marks.

G.  Directing Defendants to each file with the Court and serve on counsel for Plaintiff within thirty (30) days after entry of judgment, a sworn written statement setting forth in detail the manner and form in which each Defendant has complied with paragraph F above.

H.  Awarding to Plaintiffs damages for the Ghost Entities' breach of contract.

I.  Pursuant to 15 U.S.C. § 1117(a), awarding to Plaintiffs all of Defendants' profits from their acts of trademark infringement and dilution; and/or awarding to Plaintiffs its actual damages sustained as a result of Defendants' acts of trademark infringement and dilution.

28

J.      Awarding to Plaintiffs the costs of this action including reasonable attorneys' fees pursuant to the fee-shifting agreements set forth in the MDLZ License Agreement, 15 U.S.C. § 1117(a), and/or applicable state law.

K.      Awarding to Plaintiffs interest, including pre-judgment interest, on any of the foregoing sums.

L.      Awarding to Plaintiffs any other and further relief as the Court deems just and proper.


Dated: April 24, 2025                    Respectfully submitted,

                                          INTERCONTINENTAL GREAT
                                          BRANDS, LLC and MONDELĒZ
                                          CANADA, INC.

                                          /s/ *Dean N. Panos*

                                          Dean N. Panos
                                          Thomas E. Quinn
                                          JENNER & BLOCK LLP
                                          353 N. Clark Street
                                          Chicago, IL 60654-3456
                                          Telephone: (312) 222-9350

                                          Lawrence W. McMahon
                                          JENNER & BLOCK LLP
                                          1099 New York Avenue, NW, Suite 900
                                          Washington, DC 20001-4412
                                          Telephone: (202) 639-6000

                                          *Attorneys for Intercontinental Great Brands, LLC and Mondelēz Canada, Inc.*

29